## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CARRIE BOWMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.:** |
| | ) | **2:17-CV-1112-VEH** |
| **MARTIN, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This is an employment discrimination civil action filed by the Plaintiff, Carrie

Bowman, against the Defendant, Martin, Inc., her former employer. (Doc. 1). The case

was filed on May 3, 2017, in the United States District Court for the Western District

of Tennessee. (Doc. 1). The Complaint alleges that the Defendant terminated her,

because of her age, in violation of the Age Discrimination in Employment Act of 1967,

29 U.S.C. §§ 621-634 (the "ADEA").

On June 30, 2017, the Western District court, pursuant to 28 U.S.C. § 1404(a),

transferred the case here. (Doc. 25). The transfer was based on a forum selection clause

in a Separation Notice and Separation Agreement (the "Agreement"), entered into by

the parties in this case, which stated that "exclusive venue and jurisdiction for any

disputes regarding the interpretation or the enforcement of this Separation Agreement

is the state or federal courts sitting in Lauderdale County, Alabama." (Doc. 11-1 at 2; doc. 11-1 at 6, ¶20).

The case now comes before the Court on the Defendant's Motion for Judgment on the Pleadings, or, in the Alternative, for Summary Judgment (the "Motion"). (Doc. 37). Because the Plaintiff was *pro se* at the time the Motion was filed, the Court entered a "Notice and Scheduling Order," which advised the Plaintiff (and all parties) that the Motion would be treated as a Motion for Summary Judgment, the nature of that type of motion, and the need for the Plaintiff to respond thereto. (Doc. 38). That Order also gave the Plaintiff a deadline of October 25, 2017, to file her response. (Doc. 38 at 2). On the date her response was due, the Plaintiff filed a "Reply" to the Motion, which, in part, asked that "this Court deny the Defendant's pending motion or in the alternative grant her an additional 30 days within which to retain an attorney licensed in Alabama or in the alternative allow her to voluntarily non-suit this matter." (Doc. 40 at 3). On October 27, 2017, this Court entered a margin order which stated:

> The Plaintiff's request is GRANTED ONLY AS FOLLOWS: The Plaintiff is allowed an additional 30 days in which file a response to the pending motion for judgment on the pleadings 37 (which the Court is treating as a motion for summary judgment) either through new counsel who has appeared on her behalf, or pro se. The new deadline for her response is November 27, 2017. The Defendant's reply to her response is due by December 11, 2017. In the alternative, the Plaintiff may file, at any time, a motion to voluntarily dismiss this matter.

(Doc. 41). The Plaintiff has filed nothing more, and, since this Court's last Order, no counsel has appeared on her behalf. For the reasons stated herein, the Motion will be **GRANTED**.

## I.     SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 2265 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks omitted). The party requesting summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings in answering the movant.[1] *Id.* at 324, 106

---

[1] When *Celotex* was decided FED. R. CIV. P. 56(e) encompassed this express requirement, but now this concept is covered by the language provided for under FED. R. CIV. P. 56(c).

S. Ct. at 2553. By its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – it must designate specific facts showing that there is a genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d. 202 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249, 106 S. Ct. at 2511.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue

of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358, 116 S. Ct. 2174, 2183, 135 L. Ed. 2d 606 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the

material fact sought to be negated. *Id.*

## II. FACTS

Appearing in the Court file in support of the Motion To Transfer[2] is the

Declaration of Ann Richey, which, in pertinent part, states:

1. My name is Ann Richey. I am over twenty-one years of age, I have personal knowledge of the information given in this Declaration, and I give this Declaration voluntarily and without coercion.

2. I am currently the Human Resources and Safety Manager for Martin Inc. ("Martin") and work in Florence, Alabama at Martin's company headquarters. I have been employed by Martin since September 14, 1998.

\* \* \*

5. In my job, I manage the human resources and safety functions for Martin, which includes oversight of [Townsend Door & Hardware's ("Townsend's")] human resources and safety functions. Martin's human resources and safety departments are located at its Florence, Alabama headquarters. As Human Resource and Safety Manager, I am familiar with employee personnel records and am familiar with the human resource department's practices, procedures, and dealings with employees. As part of my regular job duties, I can readily access the personnel records of current and former employees.

6. Carrie A. Bowman was employed as a Project Manager for Townsend until October 3, 2014.

\* \* \*

10. On October 3, 2014 Ms. Bowman was laid off. That same day Ms.

---

[2] The only evidence in the Court file was submitted in connection with the Motion To Transfer. It is referred to by the Defendant in connection with the instant Motion.

Bowman was presented with a Separation Agreement ("Separation Agreement "), which she signed the next day, October 4, 2014. A true and correct copy of the Separation Agreement signed is attached hereto as Exhibit 1.

11. Exhibit 1 was made and kept by me in the regular course of business, was made at or near the time or reasonably soon after the acts, events, conditions, or opinions set forth therein and is an exact duplicate of the original record.

(Doc. 11-1 at 1-2, ¶¶1-2, 5-6, 10-11).

The Agreement[3] reads, in pertinent part:

3. Although you are not otherwise entitled to it, Martin has agreed to pay you the gross sum of $948.00, less applicable deductions. This payment represents two times your current regular weekly pay. . . .

7. In consideration of Martin's agreement to enter into this Separation Agreement and to provide the payment referenced above and the other terms of this Separation Agreement, you hereby and forever, irrevocably and unconditionally, waive and release any and all rights, claims and causes of action of whatever kind or nature, known or unknown, asserted or unasserted, hidden or concealed, that may have arisen prior to or that may exist as of the date of your execution and acceptance of this Separation Agreement. It is expressly understood and agreed that the claims covered by your release include, but are not limited to, any and all claims or rights relating to your employment or end of employment and arising or that could be asserted under . . . the Age Discrimination in Employment Act of 1967, as amended, including the Older Workers Benefit Protection Act of 1990[.]

(Doc. 11-1 at 4-5, ¶¶3,7).

Also appearing in the Court file is the Plaintiff's declaration, submitted in

---

[3] As noted in Richey's declaration, the Agreement was attached thereto as Exhibit 1.

response to the Motion To Transfer, and which, in pertinent part, states:

> 8. I was told on October 3, 2014, that I was being laid off due to a reduction in force and was given a Separation Notice and Separation Agreement to review and sign. I was told that if I signed the Separation Agreement then the company would pay me my next two weeks salary.
>
> 9. I did not understand a large portion of the Separation Agreement and no one from the employer explained it to me. Paragraph seven (7) of the Separation Agreement was confusing and difficult to understand.

(Doc. 18-1 at 2).

## III.  ANALYSIS

"When a termination agreement contains a waiver of the employee's age discrimination claim, the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), requires that the employer establish that the waiver is 'knowing and voluntary.'" *Wells v. Xpedx*, 319 Fed.Appx. 798, 800, 2009 WL 653035, at *1 (11th Cir. 2009) (quoting 29 U.S.C. § 626(f)(3); *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir.2006)). The ADEA provides, in pertinent part, that a waiver is not "knowing and voluntary" unless:

> (A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
>
> (B) the waiver specifically refers to rights or claims arising under [the ADEA];
>
> (C) the individual does not waive rights or claims that may arise after the

date the waiver is executed;

(D) the individual waives rights or claims only in exchange for consideration in addition to anything of value to which the individual already is entitled;

(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;

(F) . . . the individual is given a period of at least 21 days within which to consider the agreement . . . [and];

(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired[.]

29 U.S.C. § 626(f)(1). The Court has read the entire agreement and holds that it is written in a manner calculated to be understood by an average person, thus satisfying requirement "A" above. The Court gives no credence to the Plaintiff's conclusory allegation that she was "confused" by the language of the agreement. She has cited no reason why she should not have understood its clear and plain terms.

Furthermore, the issue was raised in the Motion To Transfer, with the Plaintiff arguing that the waiver language was "too confusing and does not satisfy the requirements necessary for the employee to have knowingly and willfully . . . waived legal rights." (Doc. 18 at 5). The Tennessee district court determined that the "Plaintiff's objections to the age discrimination waiver provision itself are [] without

merit," holding that

> the waiver was not confusing and difficult to understand. The Separation Agreement provided that Plaintiff waived any claims she might have under the ADEA, including the OWBPA, and she acknowledged that she voluntarily and knowingly agreed to do so in consideration for two weeks extra pay.

(Doc. 24 at 5). The Court is persuaded by this finding.[4] It, and the Tennessee district court's entire opinion, is adopted as the opinion of this Court.

In addition to holding that the waiver language is not confusing, the Court notes that all of the remaining requirements of the statute ("B" through "G") were met in this case. (*See* doc. 11 generally, and at 4-5, 7, ¶¶3, 7, 21). Accordingly, and in the absence of any argument from the Plaintiff on this issue[5], the Court holds that the waiver language was entered into knowingly, and is a valid waiver of the Plaintiffs right to bring an ADEA claim.

## IV. CONCLUSION

Based on the foregoing, the Defendant's Motion, which is treated as a Motion for Summary Judgment, will be **GRANTED**, and Summary Judgment will be **GRANTED** in favor of the Defendant and against the Plaintiff.

---

[4] The Tennessee District Court decided that the case should be transferred, but did not <u>dismiss</u> claims based on the waiver. Accordingly, it could be argued that that Court's opinion on the issue before <u>this</u> Court is dicta.

[5] As noted, the Plaintiff has filed a "Reply" brief. (Doc. 40). Nowhere in that document does the Plaintiff discuss the issue before the Court.

**DONE** and **ORDERED** this 9th day May, 2018.

**VIRGINIA EMERSON HOPKINS**
United States District Judge